IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD W. BALTIMORE, | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| vs. | ) | 96-AR-112-S |
| GRIFFIN WHEEL COMPANY, | ) | |
| Defendant | ) | |

99 JAN 27 PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

ENTERED
JAN 27 1999

## MEMORANDUM OPINION

The "Defendant's Statement of Facts and Memorandum of Law in Support of Defendant's Summary Judgment" submitted by defendant on January 14, 1999, is uncontroverted. It is HEREBY ADOPTED as this court's statement of undisputed facts and conclusions of law. It is attached hereto as Exhibit "A" and incorporated herein.

DONE this 27th day of January, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONALD W. BALTIMORE,       )
                           )
    Plaintiff,             )
                           )
v.                         )   No. 96-AR-112S
                           )
GRIFFIN WHEEL COMPANY,     )
                           )
    Defendant.             )

RECEIVED
99 JAN 14 PM 12:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

**DEFENDANT'S STATEMENT OF FACTS AND MEMORANDUM OF LAW
IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, Griffin Wheel Company ("Griffin Wheel"), by its attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves for summary judgment against Plaintiff, Ronald Baltimore ("Baltimore"). In support of this Motion, Griffin Wheel submits the following statement of undisputed facts and legal argument:

### INTRODUCTION

In his January 16, 1996 Complaint, Baltimore claims that he was discriminated against "as to promotion, termination, discharge, job assignments, discipline, wages, and other terms and conditions of work." (Ex. 1, Compl. ¶ 6.)[1] However, Plaintiff has never been discharged, and to this date continues to work for the Company. Moreover, on March 18, 1997, this Court effectively ruled that the only issues to be litigated in this and related cases, concern discriminatory promotional practices.

---

[1] References to "Ex. ___, _____" are to witness depositions, affidavits, and other supporting documentation included as Exhibits in the Defendant's Supporting Appendix.

1/417793 1

EXHIBIT "A"

Accordingly, despite the broad allegations of his Complaint after discovery, it is clear that the only timely and legally maintainable claim is Baltimore's assertion that on December 1, 1994, he was discriminatorily denied promotion to the Inspection and Finishing Foreman Trainee position awarded to Elbert Cooke (white). (Ex. 1, Comp. ¶ 6; Ex. 2, Baltimore Dep. 63-64; Ex. 3, Ferguson Aff. ¶ 25.) Undisputed facts, however, show that Plaintiff can never meet his *prima facie* case or ultimate burdens of proof under settled principles of Title VII and 42 U.S.C. § 1981 law. Accordingly, summary judgment should be granted in favor of Griffin Wheel.

## STATEMENT OF UNDISPUTED FACTS

**Griffin Wheel Company**

1. The Company employs approximately 115 production and maintenance employees in the manufacture of steel railroad car wheels at its Bessemer, Alabama plant, who are covered by a collective bargaining agreement between the Company and Local 165 of the Glass, Molders, Pottery, Plastics and Allied Workers International (the "Union"). (Ex. 4, Popovich Aff. ¶¶ 2, 14.)

2. Wheel manufacture involves the melting of scrap steel and various alloys and additives in an electric arc furnace to 3,000° F., followed by the pressure pouring of molten metal into graphite molds which form the wheel. After mold separation, the wheel receives various processing treatments, is heat treated and water quenched, and then goes through various final inspection and finishing steps before customer shipment. (Ex. 4, Popovich Aff. ¶ 3.)

3. The four departments which perform and support these functions are: Melting, Molding, Inspection and Finishing and Maintenance. (Ex. 4, Popovich Aff. ¶ 4.)

4. The Melting Department melts the scrap steel and other elements, and transports it to the Molding Department where pressure pouring occurs. (Ex. 4, Popovich Aff. ¶ 5.)

5. Inspection and Finishing ("I&F"), formerly called the Cleaning Department, inspects the wheels for casting discontinuities and dimensional variations, performs finishing operations on wheels, such as boring and facing, and prepares wheels for shipment. (Ex. 4, Popovich Aff. ¶ 11.)

6. Maintenance, a non-production department, is responsible for all electrical and mechanical maintenance throughout the plant. (Ex. 4, Popovich Aff. ¶ 13.)

7. The Company also has a supervisory staff consisting of Foremen, who are responsible for a given department on a specified shift. Foremen report to the Department Supervisors, who are responsible for the entire department. Melting and Molding Supervisors report to the Production Superintendent, also referred to as the Assistant Plant Manager, while the Production Superintendent and the I&F and Maintenance Supervisors report to the Plant Manager. All these positions directly or indirectly report to the Vice President of Manufacturing, John Popovich. (Ex. 4, Popovich Aff. ¶ 15.)

**Promotion Practices**

8. Prior to July 1996, vacancies in foremen and other non-bargaining unit salaried jobs within the plant were not posted. Instead, these jobs were typically filled by a consensus reached by top level Bessemer plant management including the Plant Manager, Production Superintendent and the Supervisor, in whose department the vacancy occurred, with recommendations made by Department Foremen. Supervisory recommendations were reviewed with, and generally approved by, the Vice President of Manufacturing. (Ex. 4, Popovich Aff. ¶ 17.)

9. Criteria considered and applied by plant and executive management in selecting the most qualified internal candidate included the following:

- Experience in various jobs within the department and plant, including prior supervisory experience;

1/417793.1    3

- Attendance, tardiness and other reliability factors, including willingness to work overtime;
- Disciplinary record;
- Ability to work well with other employees and supervision;
- Quality of work;
- Education, where relevant; and
- Seniority in the Company or department where the vacancy occurred.

In approximately 1994, some of these criteria were reduced to writing on an "evaluation form" and candidates were rated with respect to them and other factors on a scale from 1 to 5. (Ex. 4, Popovich Aff. ¶ 18 and Aff. Ex. 1.)

**Baltimore's Employment History and Claims of Discriminatory Promotion Denials**

10. Baltimore was hired by Griffin Wheel on January 18, 1985. (Ex. 2, Baltimore Dep. 14.) For five or six months, he worked as a Utility Person and Grinder in the I&F Department. (Ex. 2, Baltimore Dep. 29-30.)

11. Thereafter, between that position and the only cognizable promotion decision Baltimore challenges, he held various jobs, almost all of which were in the Molding Department. (Ex. 2, Baltimore Dep. 30-39.)

12. Baltimore has been disciplined by the Company, for, among other things, tardiness, leaving work early and insubordination. (Ex. 2, Baltimore Dep. 73-74; Ex. 5, RWB058, 060, 069, 127, 134.) He has also received multiple oral warnings for leaving his work area without permission. (Ex. 2, Baltimore Dep. 74.)

13. Additionally, he also has been disqualified under the terms of the Company/Union collective bargaining agreement (Ex. 6, CBA §12.07 of Article XII (D1068, 1077)) from the following positions:

- Second Helper, Melting Department (Ex. 2, Baltimore Dep. 32);
- Second Crane, Melting Department (Ex. 2, Baltimore Dep. 35); and
- Mold Turner, Molding Department (Twice Disqualified). (Ex. 2, Baltimore Dep. 53-54, 56.)

14. Baltimore served as a committeeman in the Molding Room for the Union sometime in the 1990's and was responsible for, among other things, processing grievances. (Ex. 2, Baltimore Dep. 15.) However, he was removed from his Union committeeman position after he refused to follow a directive from the Union president. (Ex. 2, Baltimore Dep. 18-21.)

15. In February 1994, the Company posted a notice inviting non-supervisory employees interested in advancement to attend an orientation course called Charting Your Course: Transition to Supervisor. Many interested employees signed the posting; those who remained interested attended a training course. Plaintiff neither signed the posting nor otherwise participated in the course. (Ex. 4, Popovich Aff. ¶ 19 and Aff. Ex. 2.)

16. Baltimore filed a Charge of Discrimination with the EEOC on May 2, 1995. (Ex. 7, Baltimore's EEOC Charge of Discrimination.)

17. Based on Baltimore's deposition testimony, his only timely claim is his assertion that he was discriminatorily denied promotion to the I&F Foreman Trainee position awarded to Elbert Cooke (white) on December 1, 1994. (Ex. 2, Baltimore Dep. 63-64; Ex. 3, Ferguson Aff. ¶ 25.)

**Elbert Cooke**

    18.    Elbert Cooke (white) was hired by Griffin Wheel on April 24, 1989 as a Grinder in the I&F Department (Ex. 8, EHC035, 041) and subsequently held the following I&F jobs:

        a.    Final Line Operator, September 18, 1989 - March 26, 1990 (Ex. 8, EHC025, 029); May 4, 1990 - May 14, 1990 (Ex. 8, EHC022-023); and October 12, 1992 - January 18, 1993 (Ex. 8, EHC012-013);

        b.    Taper, July 19, 1990 - May 8, 1992 (Ex. 8, EHC015, 019); July 27, 1992 - October 12, 1992 (Ex. 8, EHC013-014); January 18, 1993 - December 1, 1993 (Ex. 8, EHC011-012); and January 17, 1994 - (Ex. 8, EHC010);

        c.    Inside Wheel Roller/Truck Driver, May 8, 1992 - July 27, 1992 (Ex. 8, EHC014, 015); and

        d.    Snyder Mill Operator, December 1, 1993 - January 17, 1994. (Ex. 8, EHC010-011.)

    19.    On December 1, 1994, Cooke was promoted to Foreman Trainee in the I&F Department. (Ex. 3, Ferguson Aff. ¶ 25.)

    20.    Cooke was chosen for promotion by Plant Manager, Robert Ferguson; Production Superintendent, Calvin Taylor; and Larry Holder, Supervisor I&F. The decision was approved by Popovich. (Ex. 3, Ferguson Aff. ¶ 26.)

    21.    The following other employees were also given serious consideration, and their evaluations were considered: George Caver (black), Charlie Kennedy (black), Eric Ragland (black), Joe Mason (black), Bill Mello (white), and Wayne Wellborn (white). (Ex. 3, Ferguson Aff. ¶ 29; Ex. 10, Holder Dep. 26, 32-33; Ex. 3, Ex. 9, Ferguson Dep. 48-49.)

22. In the collective judgment of Ferguson, Taylor, Holder and Popovich, Cooke was the most qualified candidate for the foreman's job because of his work habits, attendance, abilities both to get along with others and learn different jobs quickly, willingness to work overtime, and experience in the Department, as well as exceptional pride in his work. (Ex. 3, Ferguson Aff. ¶ 27; Ex. 9, Ferguson Dep. 49, 213-214; Ex. 10, Holder Dep. 83-84.)

23. In addition, Cooke has never been disciplined even once in his entire career at Griffin Wheel. (Ex. 3, Ferguson Aff. ¶ 28.)

## ARGUMENT

Baltimore has offered no direct evidence that he was discriminated against because of his race,[2] and to prevail he must prove discrimination through the burden-shifting mechanisms set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[3] Plaintiff's claim fails because he can neither establish a *prima facie* case of discrimination with regard to Cooke's promotion nor prove that the Company's articulated business reasons for the decision were pretextual.

### I. No Reasonable Jury Could Find That Baltimore Was Not Promoted to I&F Foreman Because of His Race

To establish his *prima facie* case, Plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for, and applied for, the promotion in question; (3) he was rejected despite those qualifications; and (4) other equally or less qualified whites were promoted. *See Wu v. Thomas*,

---

[2] Direct evidence is "[e]vidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 at n.13 (11th Cir. 1988).

[3] This analysis applies to Plaintiff's claims under Title VII and 42 U.S.C. § 1981. The test for intentional discrimination in suits under Section 1981 is the same as the formula used in Title VII discriminatory treatment cases. *See Lincoln v. Bd. of Regents of Univ. Sys. of Georgia*, 697 F.2d 928, 935 at n.6 (11th Cir.), *cert. denied*, 464 U.S. 826 (1983).

847 F.2d 1480, 1483 (11th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989). Here, there is no dispute that Baltimore is a member of a protected minority class and that he was not chosen for the job in question. However, he cannot prove either that he was qualified for and sought the position, or that an equally or less qualified non-minority candidate was treated better. Baltimore's claim fails for either of these two independent reasons.

First, Baltimore cannot establish that he was qualified for the position of Foreman Trainee in the I&F Department. His work in the Department was extremely limited. In total, he spent no more than 6 months, out of 13.5 years, in that Department. Most of his work for Griffin Wheel was spent in the Molding Department. Additionally, Baltimore has been disciplined for, among other things, tardiness, leaving work early and insubordination. All these reliability factors are considered by the Company in evaluating individual employee promotability. Baltimore also had been disqualified from three different positions, raising questions about his ability to succeed in more responsible jobs. Moreover, he has had no supervisory experience. Finally, he showed no interest in responding to the Company's February 1994 invitation to participate in the Supervisory Orientation Program. Therefore, he was plainly not qualified.

Baltimore also cannot show that a lesser or equally qualified white applicant was promoted. Undisputed facts show that Elbert Cooke had better qualifications. Management and supervisors deemed Cooke the best of all candidates seriously considered because his work habits, attendance, ability to get along with others and willingness to work overtime all were good. Additionally, Cooke had held many I&F positions, including Grinder, Final Line, Taper, Inside Wheel Roller/Truck Driver and Snyder Mill Operator. Indeed, with a rare exception, he had worked consistently in that Department from April 24, 1989. Cooke also had an unblemished disciplinary record while, as

noted, Plaintiff's work history was rife with disciplines of all sorts, particularly those involving his work ethics.

Baltimore initially asserted that he is only infrequently absent from work, has a good work ethic and knows more jobs than Cooke (Ex. 2, Baltimore Dep. 72-75). However, he eventually admitted that he does not know whether Cooke has greater work experience in the I&F Department, and is not familiar with Cooke's attendance or disciplinary records (Ex. 2, Baltimore Dep. 71-76). Further, Baltimore's conclusory, self-serving allegations are not sufficient to avoid summary judgment here. *See Dudley v. Wal-mart Stores, Inc.*, 931 F.Supp. 773, 790 (M.D. Ala. 1996).

## II.     **Baltimore Cannot Show Pretext**

Even assuming, *arguendo*, that Baltimore somehow could establish a *prima facie* case of discrimination, summary judgment for Defendant is still merited because the reasons for its actions in selecting Cooke -- namely his unblemished work record, excellent reliability, experience in the I&F Department, work habits and ability to get along with others -- cannot be shown to be a pretext for race discrimination. As set out above, Defendant unequivocally had a factual basis for believing that Cooke was better qualified for the position than Baltimore. Not only had Baltimore only rarely worked in the I&F Department, but also his work record was poor at best. Employers are entitled to make personnel decisions for any reason other than an unlawfully discriminatory one. *See, e.g., Combs v. Planation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[F]ederal courts do not sit to second-guess the business judgment of employers. Stated somewhat differently, a plaintiff may not establish that an employer's preferred reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer"), *cert. denied*, ___ U.S. ___, 118 S. Ct. 685 (1998); *Shealy v. City of Albany*, 89 F.3d 804, 806 n.6 (11th Cir. 1996) (stating that the court "does not sit as a sort of 'super personnel officer'"

... correcting what the judge perceives to be poor personnel decisions); *Brown v. American Honda Motor Co.*, 939 F.2d 946, 951 (11th Cir. 1991) (stating that the court's role is not to second guess the wisdom of the defendant's reasoning, but to determine if the reasons are merely a cover for a discriminatory intent), *cert. denied*, 502 U.S. 1058 (1992).[4]

Plaintiff offers no evidence at all to show or suggest that the Company's explanations are false. Accordingly, he cannot raise a triable issue. *See Grisby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987).

For all these reasons, summary judgment is appropriate on this claim.

---

[4] The court in *Brown* also noted, in the § 1981 context, that a "contract may be granted 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it [ ] is not for a discriminatory reason.'" 939 F.2d at 951 (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)) (alteration in original) (citations omitted).

### III. Conclusion

For the foregoing reasons, summary judgment should be granted to Defendant, Griffin Wheel Company, and against Plaintiff, Ronald Baltimore.

Respectfully submitted,

GRIFFIN WHEEL COMPANY

By: _Abdul Kallon_ (signature)

One of Its Attorneys

RICHARD H. SCHNADIG
Illinois State Bar No. 02495384

OF COUNSEL:
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003
(312) 609-7500


JAMES P. ALEXANDER
Alabama State Bar No. 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
ABDUL K. KALLON
Alabama State Bar No. 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
ANGUS N. MCFADDEN
Alabama State Bar No. 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

OF COUNSEL:
BRADLEY ARANT ROSE & WHITE LLP
2001 Park Place, Suite 1400
Birmingham, Alabama 35203-2736
(205) 521-8000

Dated: